**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alta Piechowski, | No. CV-22-08118-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Pending before the Court is Alta Piechowski's ("Plaintiff") Motion for Summary Judgment (Doc. 21) and the Office of Navajo and Hopi Indian Relocation's ("Defendant" or "ONHIR") Cross Motion for Summary Judgment (Doc. 23). For the following reasons, Plaintiff's Motion for Summary Judgment is granted and ONHIR's Cross Motion for Summary Judgment is denied.

## BACKGROUND

The Navajo-Hopi Settlement Act partitioned the former Joint Use Area between the Navajo and Hopi Tribes. It authorized relocations of tribal citizens pursuant to mediation or federal court judgment. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n,* 878 F.2d 1119, 1121–22 (9th Cir. 1989). The Act also entitled tribal members subject to relocations by judgment to certain statutory benefits, including funds for replacement housing. *Id.* at 1122. Applicants can receive relocation assistance benefits if they were head of household during relocation, a status that can be proven by showing a valid marriage. 25 C.F.R.

§ 700(e); *see also* § 700.69(a), (c).

Plaintiff is an enrolled member of the Navajo Nation. (Doc. 14 at 123). Plaintiff grew up with her family in the Jeddito region. (Doc. 24 at 2). In 1979, Plaintiff relocated pursuant to the Act. (Doc. 14 at 185). On December 19, 2008, Plaintiff applied for relocation benefits from ONHIR. (Doc. 14 at 80–85). The Hearing Officer denied Plaintiff's claim for relocation benefits because the Hearing Officer determined that Plaintiff did not qualify as a "head of household." (Doc. 14-1 at 112–13).

## DISCUSSION

### I. Legal Standard

Under the Administrative Procedure Act, a reviewing court may reverse an ONHIR decision that is "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (*citing* 5 U.S.C. § 706(2)(A), (E)). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). In reviewing an administrative agency's decision, summary judgment is appropriate to decide whether the agency "could reasonably have found the facts as it did." *Occidental Eng'g v. INS*, 753 F.2d 766., 770 (9th Cir. 1985).

The ultimate question of law before this Court is whether the Hearing Officer erred in not recognizing the Navajo Family Court's marriage validation decree and, by extension, Plaintiff's head of household status. For the reasons detailed below, this Court finds that the Hearing Officer erred as a matter of law by not recognizing the decree.

### II. Analysis

#### A. Head of Household

An applicant seeking relocation benefits must have been a head of household as of July 7, 1986. 25 C.F.R. § 700.147(e). An applicant may prove head of household status through a valid marriage, even if there was a subsequent divorce. *Id.* § 700.69(a)(2) (defining a head of household as a "single person who at the time of []her residence on land partitioned to the Tribe of which []she is not a member . . . was legally married and is now

legally divorced"). For purposes of relocation benefits, federal regulations define a valid marriage as "a legally recorded marriage or a traditional commitment between a man or woman recognized by the law of the Hopi Tribe or the Navajo Tribe." *Id.* § 700.79. Navajo Nation Family Courts have statutory authority to validate marriages in which "parties were . . . recognized as man and wife in their community," even where the marriage itself was not "solemnized by church, state, or Navajo custom ceremony." 9 Navajo Nation Code Ann. tit. 9, § 9 (2005).

Navajo law recognizes common law marriage, and further provides for the later validation of such marriages. Navajo Nation Code Ann. tit. 9, §§ 1–21. The Navajo Family Court has the power to validate a common law marriage from the "date of inception" and have subject matter jurisdiction "to make a judicial determination that the marriage meets the requirements" of section 10 of the Navajo Marriage Code. (*See* Doc. 21-1 at 27–34). This validating power is part of the Navajo Nation's solution to a recurring problem. Since 1940, more traditional members of the Navajo Nation have elected to contract marriages outside of churches or the Navajo Nation's statutes by holding traditional ceremonies often outside of the tribal government's records. (*See* Doc. 21-1 at 4–5); Navajo Council Res. CJ-2-40 (June 3, 1940).

Between 1940 and 2005, the Navajo Nation Council passed various resolutions attempting to encourage marriage contracting through statutory schemes, while also ensuring that traditional marriages remained recognized and entitled to the benefits of marriage. (*See generally* Doc. 21-1 at 3–26). In 2015 the Window Rock District Court validated the Plaintiff's 1974 marriage. In doing so, the Court found that the Plaintiff otherwise qualified for a tribal custom marriage but was underage according to the standards articulated in the tribal code—specifically 9 Navajo Nation Code Ann. tit. 5 (1956). Yet the Court found that "[t]he authority of the Court to validate marriages and cure defects of tribal custom marriages is longstanding and continuous, beginning in 1944 and continuing through the present time." (Doc. 14 at 126 (*citing* Tribal Council Res. 1922-1951 Res. P. 84, July 18, 1944)). The Court thus declared the marriage valid under

Navajo traditional law.

ONHIR, while recognizing that a Navajo Tribal Court had declared the marriage valid, nevertheless rejected that determination for purposes of determining ONHIR benefits based on principles of comity. It did so because it rejected the validity of the notion of Navajo Fundamental law and its applicability to marriage determinations. It thus declared the Tribal Court decree invalid.

In so doing, ONHIR erred as a matter of law. ONHIR is required by its own regulations to accept "a traditional commitment between a man or woman recognized by the law of . . . the Navajo Tribe." 25 C.F.R. § 700.79. A tribal court's decision is determinative of tribal law, unless overturned within the tribal court system itself. *See* 9 Navajo Nation Code Ann. tit. 7, § 302. There is no basis for ONHIR to determine that a pronouncement by a Navajo Tribal Family Court concerning the validity of a marriage is not recognized by the law of . . . the Navajo Tribe."

Further, the law of comity does not determine whether ONHIR will accept the Tribal Court's determination when its own regulation requires it to do so. Nor is it up to ONHIR to dictate the jurisdiction of the Navajo Courts. Even if it were, ONHIR again erred in determining that the Navajo Family Tribal Court had no jurisdiction. First, as is discussed above, it can neither determine that there is no such a thing as Navajo Fundamental Law, nor that the Tribal Court erred in applying it. Even if the Tribal Court did err that does not necessarily deprive the Navajo Court of jurisdiction. Subject matter jurisdiction is the power of a court to hear particular cases under both American and Navajo legal systems. *Compare Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 91–92 (2017), *with Navajo Transp. Servs. v. Schroeder*, 7 Am. Tribal Law 516, 519 (Navajo 2007) ("Subject matter jurisdiction means that a court has authority over a case or issue, as defined by Navajo Nation statutory law and the Treaty of 1868."). Navajo Nation statutory law clearly vests family courts with subject matter jurisdiction over marriage validation petitions. Navajo Nation Code Ann. tit. 9, § 9 (2005). The Hearing Officer had no more authority to determine that the Navajo Court's acts were ultra vires than he had to determine that the

Navajo Family Court could not apply principles of traditional law (which according to the way in which he framed them, were one and the same determination.)  Without a contrary determination from the Navajo Nation's highest court, the Family Court's decree and Plaintiff's marriage are valid under Navajo law, in turn making it valid for ONHIR purposes.  25 C.F.R. § 700.79.  The Hearing Officer thus erred as a matter of law in determining Plaintiff did not qualify as a head of household.  (Doc. 14-1 at 107–08).

### B. Remand

"If the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Begay v. Office of Navajo & Hopi Indian Relocation*, No. CV-16-08221-PCT-DGC, 2017 WL 4297348, at *4 (D. Ariz. Sep. 28, 2017) (*quoting Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  At oral argument, counsel for both parties agreed that—in the event of a head of household finding—the only remaining issue would be the award of benefits.  Any other challenges were waived and not preserved.  Indeed, counsel for Defendant stated that if the Court determined that Plaintiff qualified as head of household, she would also meet all the requirements for benefits.  As such, this matter is remanded for an award of benefits.

### CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS HEREBY ORDERED** Defendant's Cross Motion for Summary Judgment (Doc. 23) is **DENIED**.

**IT IS HEREBY ORDERED** that the matter is **REMANDED** for an award of ONHIR benefits to the Plaintiff.

///

///

1  **IT IS HEREBY ORDERED** that the Clerk of Court is directed to enter judgment
2  consistent with this Order and terminate this case.
3  Dated this 7th day of December, 2023.

_____
G. Murray Snow
Chief United States District Judge